UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SUPERIOR DERRICK SERVICES, LLC.        *CIVIL ACTION NO. 6:09-0484

VS.                                    *MAGISTRATE JUDGE HILL

LONESTAR 203, ET AL.                   *BY CONSENT OF THE PARTIES

MEMORANDUM RULING REGARDING COUNTER-SECURITY

    A telephone status conference on the defendant's Motion to Provide Counter-Security [rec. doc. 77] was held on December 14, 2009. A briefing schedule was set, and the Motion was taken under advisement. The Court further advised that in the event that this court found that counter-security is warranted, a hearing to determine the amount of security would be set. [rec. doc. 84]. Having considered the defendant's Motion, the plaintiff's Opposition thereto [rec. doc. 83], and the defendant's Reply [rec. doc. 85], as well as the evidence presented at the hearing on the defendant's Motion to Vacate Warrant for Arrest or Alternatively to Fix Security, the Court finds that on the record presently before the court, counter-security should be posted by plaintiff, Superior Derrick Services, LLC ("Superior"). Accordingly, a hearing on the amount of counter-security to be posted by Superior will be conducted on February 18, 2010 at 10:00 a.m.

I. FACTS

    This case arises out of the March 27, 2009 arrest of the drilling barges, LONESTAR 203 and LONESTAR 204. Plaintiff, Superior Derrick Services, LLC ("Superior") arrested these vessels, asserting a maritime lien against the vessels as a result

of an alleged failure to pay sums due under Barge Refurbishment Contracts and a Turnkey Agreement entered into between Superior and Lonestar Drilling Nigeria, Ltd. ("Lonestar") covering refurbishment work on the drilling barges. The sole purpose of the arrest was to provide security for the original (main) demand.

Lonestar and Intercontinental Bank, PLC, as operator and owners of the drilling barges, made a claim to the vessels and filed an Answer. Lonestar additionally filed a Counterclaim against Superior. In its Counterclaim, Lonestar alleges that Superior has breached the Barge Refurbishment Contracts and the Turnkey Agreement[1] by failing to timely complete work on the drilling barges by the contractually agreed upon date, April 26, 2008. Accordingly, Lonestar alleges that it is owed stipulated damages set forth in the Turnkey Agreement in the amount of $25,000.00 per day per barge, with the exception of twenty-two days where the delay was beyond Superior's control, for a total as of March 27, 2009 of $15,650,000.00. Lonestar further seeks other damages resulting from the delay, including unspecified damages for loss of two year drilling contracts for each vessel and associated daily lost revenue, as well as demurrage charges of over $12,000,000.00 on a heavy lift vessel which was waiting to transport the drilling barges to Nigeria. [rec. doc. 11, Counterclaim, ¶ 2, 3 and 6].

Following an evidentiary hearing, this Court found that there were reasonable grounds for the issuance of an arrest warrant for the Lonestar vessels, and set security in

---

[1] All three contracts are attached to Superior's Complaint, and were also entered into evidence during the April 3, 2009 evidentiary hearing.

an amount sufficient to cover Superior's claim, fairly stated, in the amount of $7,213,503.32 with interest. [rec. doc. 31].  Thereafter, Lonestar posted security in the amount of $8,000,136.49, to secure release of the vessels. [rec. doc. 74].

Lonestar now moves under Admiralty Rule E(7)(a) for an Order of this Court requiring Superior to post counter-security for the damages claimed by Lonestar in its Counterclaim, in an amount at least equal to the amount of security posted by Lonestar.

Superior opposes the Motion arguing that counter-security is not warranted in this case, given that Superior is a Louisiana corporation with substantial assets within this Court's jurisdiction, and that, therefore, Lonestar suffers no insecurity with respect to satisfaction of any judgment which may be awarded by this court in its favor.

Superior further asserts that security on Lonestar's counterclaim should be denied because Lonestar seeks stipulated damages for delays which resulted from new and additional work resulting from change orders issued by Lonestar between April 26, 2008 and February 2009, after the completion date set forth in the Turnkey Agreement, and further seeks damages for demurrage fees which it could have avoided by permitting the heavy lift vessel to seek alternate employment during the delay in completion of the work on the barges, as evidenced by the Verified Complaint filed by the heavy lift vessel operator in this court.

By Reply, Lonestar counters that during the April 3, 2009 hearing, Mr. Tannehill (a Superior employee) admitted that the work under the Barge Refurbishment Contracts

and the Turnkey Agreement was not only not unfinished on April 26, 2008, but was still not complete by April 3, 2009, the date of the hearing.

Moreover, Lonestar asserts that Superior intentionally delayed completion of the work in order to pressure Lonestar into waiving its claim against Superior. Finally, Lonestar asserts that on the record presently before this court, Superior has shown neither its ability to satisfy any judgment nor its inability to post security. Accordingly, there is no reason for this court not to follow the dictates of Admiralty Rule E(7)(a).

**II. ANALYSIS**

Admiralty Rule E(7)(a) provides as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

FRCP, Supp. Adm. Rule E(7)(a).

As noted by the Fifth Circuit, the rule is straightforward. "When the defendant posts security to guarantee payment of an adverse judgment – typically the posting of a bond to secure release of a vessel – the complainant may be required to furnish security for the satisfaction of a counterclaim." *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987). However, "[a]lthough the language of the rule is automatic it is not absolute, for the original seizing complainant may be excused by the court 'for cause

shown.'" *Id*. "Absent this relief by the court, the intent of the rule is manifest; it is 'to place the parties on an equality as regards security.'" *Id. citing Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638-39, 44 S.Ct. 220, 223-24, 68 L.Ed. 480 (1924) (construing former Admiralty Rule 53).

The determination of "for cause shown" is relegated to the sound discretion of the district court. *Id*. The court's "discretion, although broad, is significantly cabined in some cases." *Id*. For example, courts have recognized that Seamen should not be forced to post counter-security. *Id*. (citations omitted). Moreover, "when a party is financially unable to post counter-security, courts often dispense with the requirement of the rule . . . ." *Id. citing The Beaumont*, 8 F.2d 599 (4th Cir.1925)[2] (other citations omitted).

However, the Fifth Circuit has also "recognized the pertinency of this consideration by concluding that financial difficulties would not automatically excuse the counter-security requirement." *Id.* at 404 *citing Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfschiffahrt*, 329 F.2d 538 (5th Cir.1964). Finally, courts "should not require counter-security where the counterclaim is frivolous or so lacking in merit that the court

---

[2]In *The Beaumont,* the Fourth Circuit found:
The rule never contemplated, ... that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved. 8 F.3d at 601.

5

can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant." *Id.*

In this case, it is undisputed that Lonestar's counterclaim arises from the same transaction that is the subject of Superior's original action. It is further undisputed that Lonestar has provided a bond for security in the amount of $8,050.000.00. Thus, by its express terms, Rule E(7)(a) is applicable.

Citing jurisprudence from the Western District of Washington, Superior argues that it should be relieved from the dictates of Rule E(7)(a) because it is solvent and has substantial assets within this court's jurisdiction. Solvency, however, has not to date been recognized as a justification in the Fifth Circuit for this court to dispense with the requirement of the Rule. Even if there were such authority in this Circuit, there is insufficient evidence in this record to make that determination now.

The court reserves this issue for the hearing and additional briefing.

The Court also finds Superior's argument as to the merits of Lonestar's claims equally unavailing. On the present record, the Court cannot conclude that Lonestar's counterclaim is "frivolous or so lacking in merit that the counterclaim was advanced solely to secure a negotiating advantage over" Superior. *Titan Navigation, supra*. To the contrary, while the record reveals that there were numerous change orders issued following the April 26, 2008 completion date (P9 and P15), the record also reveals a valid contract containing a stipulated damage clause requiring the payment of $25,000.00 per

day for each day the work was delayed as a result of the actions or inactions of Superior.

At this time, on the record before this court, the Court cannot determine which party was responsible for the delays, or the number of days attributable to each, much less the underlying reason which necessitated the issuance of each change order in the first instance. These are determinations which will be made at the trial on the merits. Moreover, as noted by Lonestar, during the April 3, 2009 hearing, Mr. Tannehill admitted that as of that date, work covered by both the original Refurbishment Contracts and the Turnkey Agreement was "technically" not complete and further that no Certificate of Delivery has ever been issued for either barge.

Furthermore, to the extent that any portion of the delay in completion of the work contemplated under the Barge Refurbishment Contracts and the Turnkey Agreement is found attributable to Superior, Lonestar would also be entitled to recover damages for lost revenues (from both lost drilling contracts and daily sums lost), as well as demurrage charges for those periods, less any sums which could have been minimized or avoided by Lonestar.

In sum, on the record before this court, there is a basis in both law and fact for Lonestar's Counterclaim, and as such this court is not prepared to hold at this point that Lonestar's claim is frivolous or so lacking in merit such that it could be considered advanced solely to secure a negotiating advantage over Superior, and on that basis, deny counter-security.

Having found no cause shown for this court to excuse Superior from the express dictates of Rule E(7)(a), on the record presently before this court, Superior will be required to post counter-security in an amount that will be sufficient to put the parties on equal footing, without forcing Superior to give up its claim against Lonestar.

The Court notes, however, that while Superior alleges its ability to satisfy any Judgment rendered by this court, it has not submitted any evidence supporting these allegations; it has not demonstrated that it has sufficient unencumbered assets to satisfy any adverse Judgment rendered against it.  Thus, on the present record, the Court is unable to properly "weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting counter-security, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection" as required by the Fifth Circuit.  This court will also revisit the defense of "solvency" to the requirement of counter-security raised by Superior   *Titan Navigation*, 808 F.2d at 404.

The parties have previously been advised that in the event the Court finds that counter-security is warranted, a hearing to determine the amount of counter-security would be set.  [rec. doc. 84].  Accordingly, that issue will be taken up at an evidentiary hearing on February 18, 2010 at 10:00 a.m.  In the event that the parties are able to agree on an amount for security, they shall advise the Court immediately.

8

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Lonestar's Motion to Provide Counter-Security [rec. doc. 77] is **GRANTED,** reserving the Court's right to revisit the issue after receiving evidence of Superior's solvency and financial ability to post security. The Motion insofar as it seeks to set the amount of counter-security, is deferred, and will be taken up at the hearing on February 18, 2010, if necessary.

Signed at Lafayette, Louisiana on February 5, 2010.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE