UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SUPERIOR DERRICK SERVICES, LLC.    \*CIVIL ACTION NO. 6:09-0484

VS.    \*MAGISTRATE JUDGE HILL

LONESTAR 203, ET AL.    \*BY CONSENT OF THE PARTIES

<u>ORDER AND REASONS ON COUNTER-SECURITY</u>

Before the court are the Motion to Reconsider Counter-Security filed by Superior Derrick Services, LLC ("Superior") [rec. doc. 110] and the Motion for Release of Bond Obligation filed by Lonestar Drilling Nigeria, Ltd. ("Lonestar") [rec. doc. 94].  A hearing on the former Motion was held on June 4, 2010 and the Motions were taken under advisement.

Having considered both Motions, Superior's Opposition to Lonestar's Motion for Release of Bond Obligation, and Lonestar's Reply, as well as the evidence presented at the hearing on the Superior's Motion to Reconsider Counter-Security, for the reasons which follow, the Motion to Reconsider Counter-Security [rec. doc. 110] is **granted**, and accordingly, Superior will not be required to post counter-security; the Motion for Release of Bond Obligation [rec. doc. 94] is **denied.**

**I. FACTS**

This case arises out of the March 27, 2009 arrest of the drilling barges, LONESTAR 203 and LONESTAR 204. Plaintiff, Superior, arrested these vessels, asserting a maritime lien against the vessels as a result of an alleged failure to pay sums

due under Barge Refurbishment Contracts and a Turnkey Agreement entered into between Superior and Lonestar covering refurbishment work on the drilling barges. The sole purpose of the arrest was to provide security for the original (main) demand.

Lonestar and Intercontinental Bank, PLC, as operator and owner of the drilling barges, made a claim to the vessels and filed an Answer. Lonestar additionally filed a Counterclaim against Superior. In its Counterclaim, Lonestar alleges that Superior has breached the Barge Refurbishment Contracts and the Turnkey Agreement[1] by failing to timely complete work on the drilling barges by the contractually agreed upon date, April 26, 2008. Accordingly, Lonestar alleges that it is owed stipulated damages set forth in the Turnkey Agreement in the amount of $25,000.00 per day per barge, with the exception of twenty-two days where the delay was beyond Superior's control, for a total as of March 27, 2009 of $15,650,000.00. Lonestar further seeks other damages resulting from the delay, including unspecified damages for loss of two year drilling contracts for each vessel and associated daily lost revenue, as well as demurrage charges of over $12,000,000.00 on a heavy lift vessel which was waiting to transport the drilling barges to Nigeria. [rec. doc. 11, Counterclaim, ¶ 2, 3 and 6].

Following an evidentiary hearing, this Court found that there were reasonable grounds for the issuance of an arrest warrant for the Lonestar vessels, and set security in an amount sufficient to cover Superior's claim, fairly stated, in the amount of

---

[1] All three contracts are attached to Superior's Complaint, and were also entered into evidence during the April 3, 2009 evidentiary hearing.

$7,213,503.32 with interest. [rec. doc. 31]. Thereafter, Lonestar posted security in the amount of $8,050,000.00, to secure release of the vessels. [rec. doc. 74].

Thereafter, Lonestar moved under Admiralty Rule E(7)(a) for an Order of this Court requiring Superior to post counter-security for the damages claimed by Lonestar in its Counterclaim, in an amount at least equal to the amount of security posted by Lonestar. [rec. doc. 77].

Superior opposed the Motion arguing, amongst other things, that counter-security was not warranted in this case, given that Superior is a Louisiana corporation with substantial assets within this Court's jurisdiction, and that therefore, Lonestar suffers no insecurity with respect to satisfaction of any judgment which may be awarded by this court in its favor. [rec. doc. 83].

By Reply, Lonestar countered, amongst other things, that on the record presently before this court, Superior had not shown either its ability to satisfy any judgment or its inability to post security. Accordingly, there was no reason for this court not to follow the dictates of Admiralty Rule E(7)(a). [rec. doc. 85].

Following a status conference, a hearing on the Motion, which had previously been set, was canceled and the matter was deemed taken under advisement on the record before the court, considering the evidence presented at Superior's Motion to Fix the Amount of Security. In the event the court found that counter-security was warranted, however, the court advised that a hearing to determine the amount of counter-security would be set.. [rec. doc. 84].

On February 5, 2010, the Court found that Superior should be required to post counter-security, and accordingly, an evidentiary hearing to determine the amount of security was set. [rec. docs. 88 and 89].

Following a telephone status conference, the evidentiary hearing was canceled and Superior was ordered to post counter-security on or before March 19, 2010, in the total amount of $8,050,000.00, for the damages claimed by Lonestar in its Counterclaim, that amount being equal to the security posted by Lonestar on Superior's Original Claim, and thereby achieving equality between the parties on the security issue. Superior's right to request reconsideration of the amount of counter-security to be posted was reserved. [rec. doc. 92].

When counter-security was not posted by the court's deadline, Lonestar filed a Motion for Release of Bond Obligation, arguing that equality between the parties had not been reached because of Superior's failure to post counter-security. Accordingly, to achieve that result, Lonestar requested that this court vacate the order requiring Lonestar to provide security and cancel Lonestar's vessel release bond. [rec. doc. 94].

Superior opposed the Motion arguing that by granting the Motion its preferred *in rem* rights against Lonestar would be lost, leaving Superior with a right to pursue an *in personam* action, which is, in essence a right without a remedy, given that the vessels at issue are not owned by Lonestar, Lonestar is a Nigerian corporation, with no "visible" assets in Nigeria, against whom it would be difficult to enforce any judgment. Superior additionally argued that despite its good faith efforts, it had been unable to obtain a surety

4

bond because of its inability to provide the collateral necessary to secure the bond. [rec. doc. 98].

Lonestar replied arguing, among other things, that Superior had provided no evidence to support its claim of financial inability to obtain a surety bond in the amount ordered by this court. [rec. doc. 106].

Following a telephone hearing on the Motion, the court passed the Motion for Release of Bond Obligation without date, suspended the court's deadline for Superior to post counter-security, and permitted Superior to file a Motion to Reconsider and/or to Reduce the Amount of Counter-Security. [rec. doc. 109].

Superior's Motion to Reconsider Counter-Security was filed thereafter, in which Superior asserts that, given its current financial condition, it is unable to obtain a surety bond in the amount ordered by this court. Thus, Superior asserts that its poor financial condition constitutes cause for this case to proceed without the posting of counter-security. [rec. doc. 110].

An evidentiary hearing on the Motion was held on June 4, 2010, and the Motion was taken under advisement. Testifying at the hearing was Daniel Wayne Alexander, Chief Financial Officer for Superior. Mr. Alexander's testimony indicates that Superior has a 4 million USD credit line with Chase Bank which is secured by Superior's accounts receivables and inventory (2 million USD each), of which 2.7 million USD is borrowed against, leaving 1.3 USD million available. However, that sum is not available to post a

bond because Superior needs these funds to operate and meet its payroll and other routine business expenses.

Other than furniture, fixtures and equipment, which lenders do not commonly accept as collateral, and a tract of land valued at $175,000.00, Superior has no other unencumbered assets. Moreover, while there is a possibility of Superior obtaining an additional $250,000.00 on its line of credit, Superior doesn't know if Chase Bank would increase its line of credit from 4 million USD to 4.25 million USD as that would require renegotiation and underwriting of the loan. While the company was profitable in 2008, it experienced a loss in 2009, and, thus far in 2010, the company is breaking even.

## II. ANALYSIS

Admiralty Rule E(7)(a) provides as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

FRCP, Supp. Adm. Rule E(7)(a).

As noted by the Fifth Circuit, the rule is straightforward. "When the defendant posts security to guarantee payment of an adverse judgment-typically the posting of a bond to secure release of a vessel-the complainant may be required to furnish security for the satisfaction of a counterclaim." *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987). However, "[a]lthough the language of the rule is automatic it is not

absolute, for the original seizing complainant may be excused by the court 'for cause shown.'" *Id*.

The determination of "for cause shown" is relegated to the sound discretion of the district court. *Id*. The court's "discretion, although broad, is significantly cabined in some cases." *Id*. For example, "when a party is financially unable to post counter-security, courts often dispense with the requirement of the rule . . . ." *Id. citing The Beaumont*, 8 F.2d 599 (4th Cir. 1925)[2] (other citations omitted). The fact that a party is financially unable to post counter-security should not result in dismissal of its original claim. *Id*. at 403 (citations omitted).

In exercising its discretion, the court "weigh[s] the importance of the security interest giving rise to the initial seizure, and the burden of posting counter-security, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection".[3] *Titan Navigation*, 808 F.2d at 404.

---

[2]In *The Beaumont,* the Fourth Circuit found:
The rule never contemplated, . . . that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved. 8 F.3d at 601.

[3]Courts in the Fifth Circuit have listed several factors which may be considered including, whether the posting of counter-security will prevent the plaintiff from prosecuting its claims, whether the counter-security involves the release of seized property, whether the counterclaim is frivolous or so lacking in merit that it was advanced "solely to secure a negotiating advantage over the complainant," whether the counter-plaintiff could have proceeded *in rem*, and the potential injustice of requiring one party to post security while the other party does not. *See Seatrade Group N.V. v. 6,785.5 Tons of Cement,* 2006 WL 3741904, *2 (S.D. Tex. 2006) *citing Titan, supra*., *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349-50 (11th Cir.1990) and *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 400 (2d Cir.1995); *Coastal Towing, Inc. v. Barnett Marine Services, Inc.*, 2002 WL 2022549, *1E.D. La. 2002) (citations omitted).

The Fifth Circuit has stated that the "guidon for this analysis is the court's obligation to preserve the integrity of maritime liens." *Titan*, 808 F.2d at 404. A court should not order counter-security if it would diminish the utility of the maritime lien by unfairly or unreasonably inhibiting the plaintiff's prosecution of its case in admiralty. *Id.* Courts should therefore not require counter-security in an amount so great that the original plaintiff is forced to give up his initial claim because he cannot produce the required countersecurity. *Id*. at 404-05. To do so, would, in effect, require a lien-holder to relinquish a privileged position because of a financial inability. *Id*. at 405.

In this court's prior Ruling, having found no cause shown for this court to excuse Superior from the express dictates of Rule E(7)(a) on the record before the court at that time, this court granted Lonestar's motion for counter-security as to damages claimed in its counter-claim. Superior was thus Ordered to post counter-security in an amount equal to that posted by Lonestar, $8,050,00.00, to place the parties on even ground. That Ruling noted that Superior had neither contended, nor shown, any inability to post counter-security; hence, the court's right to revisit the issue after receiving evidence of Superior's financial ability to post security was reserved. The issue now before this court is whether Superior's subsequent submissions show that it cannot do so.

Based on the present record, this Court finds that Superior has demonstrated that it is financially unable to post counter-security, sufficient to place the parties on even

ground, without forcing Superior to give up its *in rem* claim against Lonestar. The evidence presented establishes that Superior is unable to comply with the court's prior counter-security order. Superior has no unencumbered assets, and its remaining credit is needed by Superior to meet its operational expenses. Thus, requireing Superior post counter-security in an amount sufficient to place the parties on even ground would deprive Superior of its right to prosecute its claim in admiralty, thereby diminishing the utility of its maritime lien.

Lonestar seeks counter-security simply as an equitable measure based on the fact that it was required to provide security to Superior in order to release the vessels that are the subject of the main demand. However, while the court has previously noted that there is basis in both law and fact for Lonestar's counterclaim, and as such this court is not prepared to hold that its counterclaim is frivolous or so lacking in merit such that it could be considered advanced solely to secure a negotiating advantage over Superior, it is clear that Lonestar could not have originally brought its claims for breach of contract *in rem* or *quasi in rem*. Thus, unlike Superior, Lonestar does not enjoy a privileged position. It is therefore not inequitable to deny Lonestar's request for counter-security in this case.

For these reasons, Superior has shown "cause" to be excused from posting the counter-security. *Titan*, 808 F.2d at 403. Superior's motion for reconsideration is granted.

These same reasons militate against the grant of Lonestar's motion to release its bond posted to secure release of the vessels which were burdened with maritime liens in favor of Superior. Moreover, in *Titan Navigation*, the Fifth Circuit set forth the "limited

9

circumstances" the district court may, in its discretion, release the security of a maritime party. *See Pontoon Shipping Co., Ltd. v. North American Marine Inc.*, 110 F.3d 794, 1997 WL 119980, *1 (5th Cir. 1997) (unpublished) *citing Titan Navigation*, 808 F.2d at 405.

More specifically, the Fifth Circuit has noted that the security could be released if the party claiming the need for security "would be adequately protected by its *in personam* action", including the notion that the adverse party "could respond in damages should it be so cast." *Id*. The court also noted that the release should not impair "the fundamental utility of maritime liens." *Id*. The court held that a district court would not abuse its discretion in releasing a party's security under factual circumstances that meet these requirements, even though the release would "force a lien-holder to relinquish a privileged position because of a financial inability to post counter-security." *Id*.

The facts of this case do not meet the narrowly defined *Titan Navigation* criteria for release of the security posted by Lonestar. The record does not adequately demonstrate that Superior "would be adequately protected by its *in personam* action" against Lonestar. There is no evidence before this court demonstrating that Lonestar is the owner of the drilling barges which are the subject of the original (main) demand. To the contrary, in its claim to the vessels, Intercontinental Bank, PLC averred that it is the owner of the vessels. Moreover, there has been no evidence presented to establish that Lonestar possesses sufficient assets to satisfy any judgment rendered in favor of Superior. To the contrary, Superior suggests, without contradiction, that Lonestar has no "visible"

assets in Nigeria. Moreover, it is undisputed that Lonestar is a Nigerian corporation. Thus, while Superior may be able to register any judgment rendered by this court in its favor in Nigeria, it does not appear clear that Superior would be able to enforce or satisfy the judgment against Lonestar.

Lonestar argues that the security should be released because the value of its claim exceeds that of the claim asserted by Superior, and hence, Superior's claim against Lonestar would be in the nature of an offset. However, on the record before this court, the undersigned cannot determine the value the respective claims of either party. Those determinations will be made at trial on the merits. Indeed, as previously noted by this court in its prior Ruling, the value of Lonestar's claim will require findings as to which party is responsible for delays in completion of the project, the number of days attributable to each, and the reasons which necessitated the issuance of each change order in the first instance.

Finally, while this court recognizes that the contracts at issue were the result of negotiations between representatives of corporate parties and that there is no direct proof that Superior relied on the credit of the barges in deciding to enter into the agreements, under the circumstances of this case, the court cannot find that releasing Lonestar's bond obligation will not undermine the integrity of maritime liens as Lonestar suggests. Under present day realities, most maritime contracts are negotiated by corporate parties, who invariably do not consciously rely on the credit of the vessel. Thus, to accept this

argument would, in essence, permit the release of virtually every bond posted in accordance with Rule E(5) when a party is unable to provide counter-security.

As noted by the Fifth Circuit in *Titan Navigation*, despite the advent of current advances, "the ability of a ship's master to bind his vessel *in rem* continues to facilitate the prompt supply of goods and services." *Id*. at 404.  Furthermore, accepting Lonestar's argument would run contrary to the established principles of admiralty jurisdiction, allowing "discharge of a maritime lien because of the lien holder's financial limitations", a result which the *Titan Navigation* court was "loathe to approve." *Id*. at 405.

For these reasons, Lonestar's Motion for Release of Bond Obligation is denied**.**

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Reconsider Counter-Security filed by  Superior Derrick Services, LLC [rec. doc. 110] is **GRANTED**, and accordingly, Superior will not be required to post counter-security.

**IT IS FURTHER ORDERED** that the Motion for Release of Bond Obligation filed by Lonestar Drilling Nigeria, Ltd.[rec. doc. 94] is **DENIED.**

Signed at Lafayette, Louisiana on June 22, 2010.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE