UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SUPERIOR DERRICK SERVICES, LLC.    *CIVIL ACTION NO. 6:09-0484

VS.    *MAGISTRATE JUDGE HILL

LONESTAR 203, ET AL.    *BY CONSENT OF THE PARTIES

## REASONS FOR RULING

Pending before the Court are the Cross Motions for Partial Summary Judgement filed by Superior Derrick Services, LLC ("Superior") and Lonestar Drilling Nigeria, Ltd. ("Lonestar"). [rec. docs. 149 and 152]. Oppositions to each Motion have been filed. [rec. docs. 155 and 154]. Oral argument on the Motions was held and the Motions were taken under advisement.

For the reasons which follow, the Motion for Partial Summary Judgement filed by Superior [rec. doc. 149] is **GRANTED** and the Motion for Partial Summary Judgement filed by Lonestar [rec. doc. 152] is **DENIED**. Accordingly, Lonestar's counter-claim against Superior is dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the March 27, 2009 arrest of the drilling barges, LONESTAR 203 and LONESTAR 204. Plaintiff, Superior, arrested these vessels, asserting a maritime lien against the vessels as a result of an alleged failure to pay sums due under Barge Refurbishment Contracts and a Turnkey Agreement entered into between Superior and Lonestar covering refurbishment work on the drilling barges.

Lonestar and Intercontinental Bank, PLC, as operator and owners of the drilling barges, made a claim to the vessels and filed an Answer. Lonestar additionally filed a Counterclaim against Superior. In its Counterclaim, Lonestar alleges that Superior has breached the Barge Refurbishment Contracts and the Turnkey Agreement[1] by failing to timely complete work on the drilling barges by the contractually agreed upon date, April 26, 2008. Accordingly, Lonestar alleges that it is owed stipulated damages set forth in the Turnkey Agreement in the amount of $25,000.00 per day per barge, with the exception of twenty-two days where the delay was beyond Superior's control, for a total, as of March 27, 2009, of $15,650,000.00. Lonestar further seeks other damages resulting from the delay, including unspecified damages for loss of two year drilling contracts for each vessel and associated daily lost revenue, as well as demurrage charges of over $12,000,000.00 on a heavy lift vessel which was waiting to transport the drilling barges to Nigeria. [rec. doc. 11, Counterclaim, ¶ 2, 3 and 6].

The instant Motions address the contractual meaning of the "due and payable" clause of the "Final Reconciliation" statement attached to the Turnkey Agreement.

Superior asserts that the "due and payable" clause, which, it argues, may be interpreted without resort to parol evidence, obligated Lonestar to make payment of the full contractual amount for work performed under the Turnkey Agreement ($3,396,901.37) immediately upon execution of the Agreement. When full payment was not received,

---

[1] All three contracts are attached to Superior's Complaint, and one of the two identical Barge Refurbishment Agreements and the Turnkey Agreement are attached as exhibits A and G to Superior's Motion.

Superior asserts that, under Louisiana law, Lonestar was in breach of the contract and, accordingly, Superior may not be held liable for any stipulated damages for its purported delay or non-performance. Accordingly, Superior asserts that Lonestar can have no recovery on its counter-claim.

Citing common law authority (the *Restatement (Second) of Contracts* and *Williston on Contracts* (4th Ed.)), Lonestar asserts that the "due and payable" clause, which is properly interpreted with resort to parol evidence, required Lonestar to make payment of the full contractual amount for work performed under the Turnkey Agreement ($3,396,901.37) only when the work was performed. More specifically, Lonestar relies on the common law principle that, in the absence of evidence of a contrary intention, the performance of the work must precede payment. Lonestar further asserts that the purpose of the "due and payable" clause was not to require immediate payment, but, rather, was intended to restrict any amount that Superior could, at a later time, claim was owed under the Turnkey Agreement. Accordingly, Lonestar seeks partial summary judgment declaring that Lonestar was not required to pay the total Turnkey Agreement price prior to Superior's performance of its work under the Agreement.

## LAW AND ANALYSIS

**Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."[2]

Rule 56(e) provides, in pertinent part, as follows:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)[3], the court may: . . . (3) grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it . . . .

The Motions for Partial Summary Judgment are properly made and supported. Thus, neither party may rest upon the allegations in their pleadings, but, rather, must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the

---

[2] Rule 56 was revised, effective December 1, 2010, "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." *See* Committee Notes, Rule 56.

[3] Rule 56(c)(1) provides, in pertinent part, as follows:
A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

Lonestar has submitted evidence in opposition to Superior's Motion. However, Lonestar's evidence fails to demonstrate that there is a genuine issue of disputed material fact. Accordingly, summary judgment in favor of Superior is appropriate.

## LAW AND ANALYSIS

**Governing Law**

The Barge Refurbishment Agreements dated April 19, 2006, contained a choice of law clause providing that the agreement "be construed and performed under the laws of the State of Louisiana." ¶ 8.1. The Turnkey Agreement contains no such provision. However, the Turnkey Agreement does provide that, with the exception of those paragraphs which define the scope of the work, the method of payment for the work, the time for completion of the work, and the penalty for untimely completion of the work (paragraphs 4 through 7), it "shall not be construed as a substitution/alteration and therefore does not void any of the provisions of the Head Barge Refurbishment Agreement." Thus, while the Turnkey Contract is a separate contract, it clearly provides that the provisions contained in the original Barge Refurbishment Agreements, including the choice of law provision, remain in effect, excepting *only* the scope of work provisions in those Agreements. Hence, the choice of law provisions agreed to by the parties in the Barge Refurbishment Agreements remains

in force, and Louisiana law applies to the issues presented by the instant Motions.[4]

**Rules of Contractual Interpretation**

Under Louisiana law, contracts are construed according to the general rules of interpretation of contracts found in articles 2045-2057 of the Louisiana Civil Code. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 307 (La. 2001). The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. *Id. citing* La. C.C. arts. 2045 and 2047, and *Amend v. McCabe*, 664 So.2d 1183, 1187 (La. 1995). To ascertain the parties' intent, the court must first look to the words and provisions of the contract. *French Quarter Realty v. Gambel*, 921 So.2d 1025, 1029 (La. App. 4th Cir. 2005); *Fleet Intermodal Services, LLC v. St. Bernard Port*, - - So.3d - -, 2011 WL 976542, *3 (La. App. 3rd Cir. 2011). The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. *Ortego v. State, Dept. of Transp. and*

---

[4] Neither party contests the validity of the choice of law provision in the Barge Refurbishment Agreements, which select Louisiana law as the governing law. Moreover, it is clear that the choice of law clauses are valid. "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). S*ee also St. Paul Fire & Marine Ins. Co. v. Board of Com'rs*, 2011 WL 890934, * 3 (5th Cir. 2011) (unpublished). The parties' choice of law clause in an admiralty case will govern "unless the [chosen] state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988). S*ee also St. Paul, supra*. The choice of law clauses here meet both prongs of this test. Louisiana has a substantial relationship to the parties because Superior is a Louisiana corporation and the work under the contracts at issue was to be performed in Louisiana. Finally, neither party argues that Louisiana law conflicts with any fundamental purposes of maritime law, or that the application of Louisiana law would be unreasonable or unjust.

*Development,* 689 So.2d 1358, 1363 (La. 1997); *Maniscalco v. Lafayette City-Parish*, 2011 WL 309560, *3 (La. App. 3rd Cir. 2011) *citing* La. C.C. art. 1848; *Fleet Intermodal Services, LLC,* - - So.3d - -, 2011 WL 976542 at *3 .

Thus, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. *SWAT 24,* 808 So.2d at 307 *citing* La. C.C. art. 2046; *Wooley v. Lucksinger*, - - So.3d - - , 2001 WL 1205136, *28 (La. 2011). The use of extrinsic (parol) evidence is proper only where a contract is found to be ambiguous after examination of the four corners of the instrument. *Succession of Barreca v. Weiser,* 53 So.3d 481, 491 (La. App. 4th Cir. 2010) *citing Highlands Underwriters Ins. Co. v. Foley,* 691 So.2d 1336, 1340 (La. App. 1 Cir. 1997).

The determination of whether a contract is clear or ambiguous is a question of law. *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 590 (La. 2007). Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Id.* That is the case herein. The words of the Turnkey Agreement and the "Final Reconciliation" statement attached thereto are clear and explicit and lead to no absurd consequences. Accordingly, the Agreement is properly interpreted from the four corners of the document without resort to parol evidence.

**Analysis**

The "due and payable" clause of the "Final Reconciliation" statement attached to the Turnkey Agreement is clear and unambiguous. The terms of paragraph 2 of the Turnkey Agreement are also clear and unambiguous. The clear and unambiguous meaning of these provisions is that Lonestar was required to remit payment of the full remaining balance under the refurbishment agreements of $3,396,901.37 immediately upon execution of the Turnkey Agreement.

The "Final Reconciliation" was compiled by the parties "as at 11/03/08" (March 11, 2008), to be effective from December 28, 2007. The document therefore reflects outstanding sums due for work performed on a time and material basis through December 28, 2007, as well as a contract price for work which was performed under the Turnkey Agreement from that date forward, which would be performed under the Turnkey Agreement. Unlike the Barge Refurbishment Agreements, neither the Final Reconciliation nor the Turnkey Agreement sets forth a "Progress Payment" schedule. Rather, the parties merely set forth the "Balance due and payable to Superior", after deducting various credits, including a prior $5.4 million "payment on account."

The Turnkey Agreement, which incorporates the Final Reconciliation as an attachment, like the Final Reconciliation, notes $3,396,901.37 as the "total outstanding monies due to [Superior]." (¶ 2). Tellingly, the Agreement does not provide that this sum will be due upon completion as Lonestar suggests, or due at any other time in the future.

Rather, in the first sentence of paragraph 2, the parties stated that this sum represented "outstanding" money which was "due" to Superior from Lonestar.

Black's Law Dictionary defines "due" as "owing", "payable" and "justly owed", as well as "that which the law or justice requires to be paid." Black's Law Dictionary 499 (6th ed. 1990). Black's continues, "commonly, and in the absence of any qualifying expressions, the word 'due' is restricted to" mean "that the debt . . . is now (presently or immediately) matured and enforceable." *Id*.

Black's Law Dictionary defines "payable" as meaning not only "[c]apable of being paid" but also "justly due" and "legally enforceable." Black's Law Dictionary 1128 (6th ed. 1990). Black's continues, "A sum of money is said to be payable when a person is under an obligation to pay it. Payable . . . normally means that the debt is payable at once." *Id*. *See also In re Ripley*, 926 F.2d 440, 444 (5th Cir. 1991) (construing the term "payable" under a provision of the IRC).

Construing these terms together, in the absence of any qualifying language (as for example, due and payable at a certain date or occurrence in the future), the only reasonable meaning to be affixed to the words used in the Turnkey Agreement, means the debt ($3,396,901.37) was presently, or immediately, payable.

This interpretation is bolstered by the parties' use of the term "outstanding" to describe the "monies due" to Superior in the body of the Turnkey Agreement. Black's Law Dictionary defines "outstanding" as "constituting an effective obligation", as well as an

9

"outstanding debt." Black's Law Dictionary 1102 (6th ed. 1990).

Moreover, the second sentence of the Agreement states that save and except $3,396,901.37 Lonestar is "not indebted" to Superior for further amounts. As noted by Superior, the converse of this sentence evidences that the parties agreed that, at the time the Agreement was executed in March 2008, Lonestar was then indebted to Superior for the "total outstanding monies due", namely, the full Turnkey Agreement price of $3,396,901.37.

While Lonestar argues that payment must follow completion of the work, that argument fails to recognize the dates listed in the contract and the clear and unambiguous language used by the parties to the Agreement. Although the Turnkey Agreement was apparently actually signed by Lonestar on March 25, 2008, the parties agreed in the closing paragraph that the agreement was "executed" on December 28, 2007.

Moreover, although the Final Reconciliation was performed on March 11, 2008, the delvery date of these vessels was April 26, 2008. Thus, it is clear that the parties contemplated payment to compensate Superior for work performed both before and after the Final Reconciliation. Nevertheless, the parties failed to set a payment schedule for the $3,396,901.37, instead providing that this amount, as a balance, was "due and payable."

Given that the Final Reconciliation establishes, on its face, that Lonestar was in arrears on payments for work performed by Superior on a time and materials basis before the Final Reconciliation, it is entirely reasonable that the parties thereby agreed that Lonestar would make immediate payment of the full Turnkey Agreement price. This,

coupled with the words "balance due and payable" in the Final Reconciliation, and "indebted" and "total outstanding monies" contained in paragraph 2 of the Turnkey Agreement, leads to the inescapable conclusion that the parties agreed that immediate payment would be made to Superior by Lonestar for all of the work specified in the Agreement, even though all of the work had not yet been completed.

It is undisputed that Lonestar failed to pay Superior $3,396,901.37, the full balance due and payable under the Turnkey Agreement upon execution of the Agreement. To the contrary, the record establishes that Lonestar made only a minimal partial payment of $396,901.37, leaving $3,000,000.00, the bulk of the Agreement price, unpaid. Under Louisiana law, Lonestar's substantial breach of its payment obligations under the Turnkey Agreement relieved Superior of its performance obligations. *See Olympic Insurance Co. v. H.D. Harrison, Inc.*, 463 F.2d 1049, 1053-1054 (5th Cir. 1972); *Commerce Ins. Agency, Inc. v. Hogue,* 618 So.2d 1048, 1052 (La. App. 1st Cir. 1993) (and cases cited therein including *Silverman v. Caddo Gas & Oil Co.,* 127 La. 928, 54 So. 289 (La. 1911)*; see also Giddens v. Alpine Constr. Specialties, Inc.*, 401 So.2d 1026 (La. App. 2nd Cir. 1981); *C&W Constr. Co. v. The Travelers Indem. Co.*, 147 So.2d 706 (La. App. 1st Cir. 1962).

Accordingly, Superior is not liable for any stipulated damages for its purported delay or non-performance. *See Id.; see also* La. C. C. art. 2008 ("An obligor whose failure to perform the principal obligation is justified by a valid excuse is also relieved of liability for stipulated damages."). Summary judgment is therefore proper since Lonestar cannot recover

11

on its counter-claim.

Finally, while Lonestar argues, under the common law, that Superior waived its right to demand immediate full payment of the Turnkey Agreement price by continuing to perform work under the contract, the Court cannot accept this argument. Louisiana is not a common law state; Louisiana is a civil law state. Lonestar has cited no Louisiana authority in support of its waiver argument, and the Court knows of no such authority under Louisiana law.

Finally, Lonestar's argument ignores the exception to the common law principle relied on, applicable here, that there must be an absence of evidence of a contrary intention for work to precede payment. In this case, as discussed above, both the Final Reconciliation and the Turnkey Agreement, evidence a contrary intention, that is, that there be full payment of the Turnkey Agreement price upon execution of the Agreement.

## CONCLUSION

For the above reasons, the Motion for Partial Summary Judgement filed by Superior [rec. doc. 149] is **GRANTED** and the Motion for Partial Summary Judgement filed by Lonestar [rec. doc. 152] is **DENIED**. Accordingly, Lonestar's counter-claim against Superior is dismissed with prejudice.

Signed June 21, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE